AO 91 (Rev. 02/09) Criminal Complaint

# United States District Court
### for the
### Western District of New York

United States of America

v.

**BRIAN THOMAS,**

*Defendant*

Case No. 20-MJ-4125

## CRIMINAL COMPLAINT

I, Christina T. Peklak-Scott, Special Agent with the Federal Bureau of Investigation, the complainant in this case, state that the following is true to the best of my knowledge and belief:

On or about and between March 29, 2020 and May 21, 2020, in the Western District of New York, the defendant did knowingly receive and distribute child pornography that had been transported in and affecting interstate and foreign commerce, including by computer, and did possess and access with intent to view, material that contained an image of child pornography that had been transported using a means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce, including by computer, and that was produced using materials that had been shipped and transported in and affecting interstate and foreign commerce, all in violation of Title 18, United States Code, Sections 2252A(a)(2)(A) and 2252A(a)(5)(B).

This Criminal Complaint is based on these facts:

**SEE ATTACHED AFFIDAVIT OF F.B.I. SPECIAL AGENT CHRISTINA T. PEKLAK-SCOTT.**

☒ Continued on the attached sheet.

*Complainant's signature*

CHRISTINA T. PEKLAK-SCOTT, Special Agent, F.B.I.
*Printed name and title*

Affidavit and Criminal Complaint submitted electronically by email in .pdf format. Oath administered, and contents and signature, attested to me as true and accurate telephonically pursuant to Fed.R.Crim. P. 4.1 and 4(d) on:

Date: July 13, 2020

City and State: Rochester, New York

Marian W. Payson
*Judge's signature*
MARIAN W. PAYSON
UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

STATE OF NEW YORK      )
COUNTY OF MONROE    ) ss:
CITY OF ROCHESTER      )

CHRISTINA T. PEKLAK-SCOTT, being duly sworn, deposes and states:

1. I am a Special Agent with the Federal Bureau of Investigation, and as such am a law enforcement officer of the United States empowered to perform investigations of and make arrests for violations of federal law, including crimes involving the sexual exploitation of children as proscribed by 18 U.S.C. § 2252A. I have been employed as a Special Agent with the FBI since September of 2007, and am currently assigned to the Corning, New York, Resident Agency (RA) of the FBI within the Western District of New York. As a result of my training and experience, I am familiar with and can identify materials constituting child pornography within the meaning of 18 U.S.C. § 2256.

2. This affidavit is submitted in support of a criminal complaint charging BRIAN THOMAS with knowingly receiving, distributing, and possessing child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and 2252A(a)(5)(B).

3. This affidavit is based on my investigation, and on information provided to me by members of the law enforcement community. Because this affidavit is being submitted for the limited purpose of securing a criminal complaint, I have not included each and every fact known to me concerning the investigation. Instead, I have set forth only the facts which I believe are necessary to establish probable cause to conclude that THOMAS violated 18 U.S.C. §§ 2252A(a)(2)(A) and 2252A(a)(5)(B).

4.     On March 29, 2020, a law enforcement employee (the UC) acting in an online undercover capacity, in Rochester, New York, was investigating individuals who use Peer to Peer networks to share files containing child pornography.[1] The UC identified a computer that was offering to participate in the distribution of child pornography. The computer was using IP address 74.74.69.239 to communicate with the Peer to Peer network. The UC obtained two video files from the IP address, including:

    **i.**    **1+ADAM002 13yo jerks his 2 inch cock- (videotaping 13yo boys body and jerking off)(nice balls for a 13yo, but a small dick, no you dont).mpg**

> The video begins with a close-up of a pre-pubescent male's genital area. The video then widens out and captures the boy standing in what appears to be a bedroom. The child is initially standing up, facing the camera. He then turns to the side and the camera zooms in to obtain another close-up of his genitals. Later in the video, the child is lying on his back on a bed masturbating.

    **ii.**    **6Yo Licks 8Yo 6Yo Licks 8Yo Girl - Good Pussy-Licking Shots! Then 14Yo Boy Fucks 8Yo!! Warrior48 (Pthc Preteen).avi**

> The video begins with a close-up of a pre-pubescent female's genital area. The child appears to be sitting on a chair with her legs spread and her skirt pulled up, with no undergarments. The child then masturbates, repeatedly inserting her finger into her vagina. Another individual (who is mostly off screen) then repeatedly inserts a finger into the child's vagina. Later in the video, another female child performs oral sex on the first female, while she is seated in a chair with her legs spread open. The video then shows a close-up of a female child's genital area with a penis penetrating it.

Based on my training and experience, I believe that both videos constitute child pornography as defined by 18 U.S.C. § 2256(8).

5.     On April 1, 2020, a subpoena was issued to Charter Communications requesting information regarding the user of the IP address including the time the above

---

[1] A Peer to Peer network allows individual internet users from around the world to interconnect and share electronic media in their possession.

2

described files were obtained. In response, Charter Communications provided the following information:

> Subscriber: BRIAN THOMAS
> Address: 759 JAY ST., LOWR., ELMIRA, NY 14901-2516
> Phone: (607) 215-8118

6. I performed a search of a law enforcement tool (hereinafter, tool) that records information concerning individuals who use their computers to share child pornography. The tool recorded various files of interest being shared by the SUBJECT IP address between October 1, 2019 and April 4, 2020, which includes the timeframe in which the above described undercover work was performed.

7. The tool records the hash value associated with the files that users are offering to share. In addition, when a member of the law enforcement community obtains a copy of the file, the tool allows a description to be associated with that file. I have reviewed the descriptions associated with some of the files that have been offered by the SUBJECT IP address. Based upon my training and experience, I believe these files would meet the statutory definition of child pornography as set forth in 18 U.S.C. § 2256

8. A criminal history search for THOMAS identified several previous arrests involving child exploitation crimes. On September 24, 1983, THOMAS was arrested by the Elmira City Police Department for Sexual Abuse 1st: Sexual Contact with an Individual Less Than 11 Years Old, in violation of the New York State Penal Law. THOMAS plead guilty to the charge and was sentenced to one to six years incarceration.

9. On April 7, 1987, THOMAS was arrested by the New York State Police for Promoting a Sexual Performance by a Child Less than 16 Years of Age and Acting in a Manner Injurious to a Child Less Than 16. On May 20, 1987, THOMAS was arrested for

Use of a Child Less Than 16 Years of Age in a Sexual Performance. That same day, THOMAS was arraigned on the following charges: Promoting a Sexual Performance by a Child Less than 16 Years of Age and Acting in a Manner Injurious to a Child Less Than 16. THOMAS plead guilty to Attempted Promoting a Sexual Performance by a Child Less Than 16 Years of Age, in violation of the New York State Penal Law, and was sentenced to 18 months to three years incarceration.

10. On November 1, 2011, THOMAS was arrested by the Elmira City Police Department for Possessing A Sexual Performance By a Child Less Than 16 Years of Age in violation of the New York State Penal Law. On February 10, 2012, THOMAS plead guilty to that charge and was sentenced to 1 to 3 years incarceration.

11. A search of the New York State Sex Offender Registry indicated THOMAS is a current registered sex offender. The address listed for THOMAS is 759 Jay Street, Elmira, New York 14901.

12. Based on the foregoing, I obtained a search warrant for 759 Jay Street, Elmira, New York, which was executed on May 21, 2020. THOMAS was home at the time the search warrant was executed and was initially restrained while the residence was being secured. While the search was being conducted, THOMAS agreed to accompany agents to an FBI-owned vehicle located on Jay Street for an interview. At that point, the restraints were removed and THOMAS was informed that he was not under arrest. THOMAS was subsequently read his Miranda rights, which he waived.

13. During the interview, THOMAS was asked if he knew why a federal search warrant would be granted for his residence. THOMAS replied that it was probably related to

his laptop and child pornography. Agents confirmed the search warrant was related to child pornography being distributed from the IP address associated with his residence.

14. THOMAS went on to explain that he uses his laptop computer and the Peer to Peer program "eMule" to download files. According to THOMAS, he is familiar with Peer to Peer programs and has been using eMule for approximately five years. THOMAS explained to agents how Peer to Peer programs work and acknowledged knowing that even though a file download is not complete, the program will allow a user to share pieces of that file with other users. THOMAS stated that he will generally keep eMule running 24 hours a day and that he will later review the files that have been downloaded and delete the files he does not want.

15. After initial denials, THOMAS admitted to using search terms that he believed would result in locating child pornography images and/or videos. THOMAS would search for files using the term "Omegle" and, most recently, the word "rape."

16. I showed THOMAS screen capture images of the videos obtained by the UC on March 29, 2020 as described above. THOMAS was unable to confirm that he had watched the first video, stating that since he had seen so many similar child pornography videos over time, he could not be completely sure. THOMAS indicated that he was certain that he watched the second video of child pornography. When asked how he could be sure, THOMAS said it was rare to find a video involving two female children and that is why he remembered it.

17. During the interview, THOMAS explained that he felt conflict over his need to view child pornography. He stated that he knows child pornography is wrong, but is often unable to keep himself from downloading and viewing the files. THOMAS indicated that

5

because of the guilt, he would often delete child pornography files after viewing them. As a result, THOMAS did not believe there would be any active child pornography files on his laptop computer.

18. Agents seized digital items from THOMAS' residence, including a SanDisk Ultra 3.0 16 GB thumb drive and a Microsoft laptop computer. Both items were submitted to the Regional Computer Forensic Lab (RCFL) for a full forensic examination. The thumb drive and laptop both contained the trade mark "Made in China." A hard drive within the laptop contained the trade mark "Product of Korea." Therefore, these items traveled in interstate and foreign commerce.

19. On the thumb drive, the RCFL located the following video of child pornography:

   i. "!IBCAM~1(2).AVI"

   The video depicts two prepubescent boys sitting in front of a computer, which has a video camera. The boys appear to be using the computer to communicate with someone who may be providing direction to them. The boys engage in oral sex with one another on multiple occasions throughout the video. In addition, one boy is observed masturbating in front of the camera.

20. THOMAS identified the Microsoft laptop computer as the computer that he utilized to obtain child pornography.

21. The RCFL advised that according to data on the laptop, IP address 74.74.69.239 had been assigned to that specific computer. In addition, the forensic exam discovered eMule software configuration files and artifacts on the laptop.

22. The forensic examination also identified a folder associated with eMule downloads for the user "Brian." This folder contained over fifty file titles indicative of child

6

pornography. Most of these files contained the word "rape" in the file title, which is consistent with THOMAS' admission that he had recently searched for child pornography using the word "rape."

23. Moreover, the forensic examination recovered indications that files with the following titles had been recently played:

   i. bibcam omegle 2014 12 yo boy get sucked 0401.mp4
   ii. Omegle – 2 13 yo Boys Suck (15.04.2011).mp4
   iii. Pedo Gay Azov 10Yo 12Yo Very Nice Sex (Sweet Kissing Hot Boy Fucking) 20m14.avi.

Based on my training and experience, I know that these titles are consistent with files depicting child pornography.

24. Also present on the laptop computer was evidence of the application Piriform CCleaner. This program is a privacy tool used to clean data from prevalent internet browsing applications and certain operating system data stored about the user to include, Recycle Bin information, uninstalling applications, System Restore points, Registry information and free disk space from a computer. This program was likely utilized by THOMAS to delete files and is consistent with his assertion that he would routinely delete child pornography from his computer.

25. On May 28, 2020, THOMAS came to the FBI Office in Corning, New York to take a polygraph examination. THOMAS was free to leave, was not placed under arrest, and was not handcuffed or physically restrained. Prior to the polygraph, THOMAS was issued Miranda warnings, which he indicated that he understood and agreed to waive.

26. THOMAS was asked to summarize his past criminal history to include details of his previous arrests/convictions related to the sexual exploitation of minors. According to THOMAS, he was first arrested in Chemung County in or about 1980 when he was 18 years

7

old. THOMAS was charged with sexually abusing a four-year-old girl he babysat. THOMAS described the abuse, noting he touched the child with his hands and penis, but did not forcibly penetrate her. THOMAS was sentenced to probation for this offense. He violated his probation when he refused to comply with the mental health conditions of his sentence and was subsequently incarcerated for one year.

27. THOMAS said he was again arrested in 1984 for the sexual abuse of a minor. The victim was a three-year-old girl. THOMAS admitted to rubbing himself against the child and having "non-aggressive" intercourse with her. The abuse only occurred one time. THOMAS was convicted and sentenced to serve a 1 to 3 year prison term.

28. THOMAS recalled his next arrest was in 1987, this time for the use of a child in a sexual performance. According to THOMAS, he took several photographs of his cousin's five-year-old daughter. When asked, THOMAS denied any further sexual contact with the child. THOMAS was convicted and received a sentence of 1 to 3 years imprisonment for this crime.

29. THOMAS said his next arrest was in 2011, when he was charged with possession of child pornography. According to THOMAS, he began to use the internet sometime around 2000, but did not begin to download child pornography until much later. Sometimes he would intentionally search for child pornography. On other occasions, he would find child pornography as he was scanning indexes while searching for other files. THOMAS was convicted and received a sentence of 1 to 3 years incarceration for the possession of child pornography. According to THOMAS, he did not want to be on parole, so he completed a full 3 year prison term, and was released in late 2014.

30. THOMAS was asked if there were any other times when he abused and/or exploited a child, but was not arrested. THOMAS replied in the affirmative and provided the instances detailed below (arranged chronologically):

i. In the 1980s THOMAS babysat a set of sibling, ages 10 (male) and 5 (female). THOMAS admitted to abusing the children on multiple occasions, to include performing oral sex on the male;

ii. In the 1990s, THOMAS babysat two sisters. According to THOMAS, he abused the girls on multiple occasions. When asked to describe the sexual abuse, THOMAS said he engaged in "mild intercourse" with the girls. When asked to define what mild intercourse meant, THOMAS said he only penetrated the surface and the intercourse was not forced. THOMAS also admitted to performing oral sex on the sisters.

iii. THOMAS also babysat another set of siblings in the 1990s, ages (female) 4 and 5 (male). When asked to detail the sexual abuse, THOMAS admitted to having performed oral sex on both children on multiple occasions.

iv. THOMAS also abused three other neighborhood children when he was a minor. The children were approximately four to five years of age when he touched them. Two of the children were the daughters of a local shop owner. The third child was an acquaintance from the neighborhood. THOMAS admitted to inappropriately touching the children, but denied engaging in intercourse or performing oral sex on them.

31. THOMAS denied being currently sexually active and denied having exploited any children sexually since his last arrest in 2011. Initially, THOMAS stated he thought and fantasized about children occasionally. When pressed for clarification, THOMAS admitted to thinking and fantasizing about children on a daily basis. THOMAS reiterated his primary sexual attraction is to children. His secondary sexual attraction is to women, and he only has a mild sexual attraction to boys.

32. THOMAS recalled a few instances since 2001 where he has interacted with children socially, but stressed that since then, he has purposefully isolated himself so he no longer interacts with children.

33. THOMAS was then given a polygraph examination consisting of the following relevant questions: (a) Since 2014, have you had any sexual contact with a minor?; and (b) After 2014, have you had sexual contact with a minor in any way? THOMAS answered "no"

9

to these questions. THOMAS passed the polygraph with respect to these questions and answers.

34. Following the examination, THOMAS provided no additional relevant information.

## CONCLUSION

35. Based on the foregoing, I submit that probable cause to believe that THOMAS did knowingly possess, and access with intent to view, material that contained images of child pornography, that had been transported in or affecting interstate or foreign commerce by computer, in violation of 18 U.S.C. § 2252A(a)(5)(B), and did knowingly receive and distribute child pornography that had been transported in or affecting interstate or foreign commerce by computer, in violation of 18 U.S.C. § 2252A(a)(2)(A).

_____
CHRISTINA T. PEKLAK-SCOTT
Special Agent
Federal Bureau of Investigation

Affidavit and Criminal Complaint submitted
electronically by email in .pdf format.
Oath administered, and contents and signature
attested to me as true and accurate telephonically
pursuant to Fed.R.Crim. P. 4.1 and 4(d) on
July 13, 2020.

\_\_\_Marian W. Payson_____
MARIAN W. PAYSON
United States Magistrate Judge

10